# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JAMES BROWN, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No.: K19C-09-035 JJC |
| | : | |
| DAVID ARNOLD, | : | |
| | : | |
| Defendant. | : | |
| | : | |

Submitted:  December 9, 2022
Decided: January 5, 2023

***Plaintiff's Motion for New Trial:  GRANTED***
***Defendant's Motion for Costs:  DENIED, without prejudice***

## MEMORANDUM OPINION & ORDER

William D. Fletcher, Jr., Esquire, Schmittinger &  Rodriguez, P.A., Dover, Delaware, *Attorney for Plaintiff*.

Miranda D. Clifton, Esquire, Heckler & Frabizzio, P.A., Wilmington, Delaware, *Attorney for Defendant*.

**Clark, R.J.**

Plaintiff James Brown sued Defendant David Arnold for personal injuries after an automobile accident on October 2, 2017 ("the accident"). At the pretrial conference, Mr. Arnold admitted that his negligence proximately caused the collision between their two vehicles. He disputed only the nature and extent of Mr. Brown's injuries and damages.[1] He nevertheless acknowledged that Mr. Brown suffered at least some injury because of the accident. The parties' trial presentations conformed to that understanding, and the Court memorialized it in the jury instructions. Nevertheless, the jury returned a zero-dollar verdict. Now, Mr. Brown seeks a new trial because he contends that the verdict was against the great weight of the evidence. In response, Mr. Arnold opposes a new trial and seeks costs as the prevailing party.

For the reasons explained below, there must be a new trial because the law of the case, memorialized in the pretrial stipulation and order, recognized that Mr. Brown suffered an injury caused by the accident. The parties' trial presentations reflected that understanding and the jury instructions memorialized it, but the jury nevertheless disregarded it. Furthermore, a new trial is independently appropriate because no reasonable jury could have declined to award Mr. Brown some compensation for his injury on this trial record. Lastly, because there will be a new trial, Mr. Arnold's motion for costs must be denied, without prejudice.

## I.    PROCEDURAL AND FACTUAL BACKGROUND

The parties filed their pretrial stipulation before the pretrial conference. In the stipulation, Mr. Arnold conceded that the only factual issues for trial were "the nature and extent of plaintiff's damages causally related to the motor vehicle accident of October 2, 2017."[2] Elsewhere in the stipulation, Mr. Arnold conceded

---

[1] Pretrial Stip. at 3, 6.
[2] *Id*. at 3.

that he disputed only "the causal relationship of *some* of Plaintiff's claimed injuries as well as the extent of Plaintiff's injuries."[3]   The pretrial stipulation also confirmed that Mr. Brown sought only general compensatory damages.

At trial, both parties presented expert medical testimony.  First, Dr. William Barrish testified on behalf of Mr. Brown.  He explained how he had examined Mr. Brown on one occasion and performed a medical record review.[4]  He opined that Mr. Brown suffered a significant and permanent neck injury related to the accident, notwithstanding a significant preexisting degenerative neck condition.[5]  Because he believed Mr. Brown's condition to be asymptomatic before the accident but consistently present since, he testified to a reasonable degree of medical probability that the accident caused him permanent neck pain and limitations.

Dr. Andrew Gelman then testified on behalf of Mr. Arnold.  He had examined Mr. Brown as a defense expert, also on one occasion, and reviewed his medical records.[6]   Dr. Gelman acknowledged that the accident caused Mr. Brown injury, but he believed it to be neither permanent nor long-lasting.[7]   Rather, Dr. Gelman believed that the accident caused him a soft-tissue injury that resulted in two months of pain, suffering, and limitations.[8]  Although he opined that Mr. Brown's accident-related injury resolved within two months, he conceded that the treatment provided to Mr. Brown during those two months was reasonable, necessary, and related to the accident.[9]   According to Dr. Gelman, however, any treatment after that point bore no relationship to the accident.[10]

---

[3] *Id*. at 6 (emphasis added).
[4] Ct. Ex. 1, at 11. The parties presented their expert testimony through video trial depositions.  The Court included the experts' written deposition transcripts in the record as Court exhibits.
[5] *Id*. at 27-28.
[6] Ct. Ex. 3, at 10-12.
[7] *Id*. at 17, 25.
[8] *Id*. at 41-42.
[9] *Id*. at 21-22.
[10] *Id*. at 22.

Mr. Brown testified at trial that he had no neck complaints before the accident. Furthermore, the balance of the trial record includes no evidence that a reasonable jury could have relied upon to infer that Mr. Brown had prior neck complaints. Nor does the trial record include any attempts by Mr. Arnold to impeach Mr. Brown's testimony regarding an absence of prior symptoms. Given this partially uncontroverted evidence, the dispute as to damages distilled to whether Mr. Brown suffered (1) a soft-tissue injury of two-month duration or (2) a significant and permanent aggravation of a previously asymptomatic condition.

The jury instructions, in a form consented to by Mr. Arnold, confirmed that he suffered at least some injury. Namely, the instructions confirmed that *Mr. Arnold* admitted the following:

(1) [Mr. Arnold] negligently operated his motor vehicle; [and]
(2) [Mr. Arnold's] negligence was the proximate cause of the motor vehicle injury *which caused injuries* to Plaintiff.[11]

Moreover, *Mr. Arnold* requested that the Court include, in the special verdict sheet, the following:

State the amount of compensatory damages you award to James Brown for damages proximately caused by the negligence of David Arnold (*the amount must be more than $0*).[12]

$ _____

At the prayer conference, Mr. Arnold contended, through his attorney, that the Court should include the above-italicized language in the verdict sheet because a zero-dollar verdict in the case would be unsustainable. After discussing Mr. Arnold's proposal, the Court declined to include it over his objection.[13] It declined the request, not as a precursive ruling that a zero-dollar verdict could stand, but

---

[11] Jury Instr. at 6 (emphasis added).
[12] Def.'s Proposed Jury Instr. at 27 (emphasis added).
[13] Jury Instr. at 26.

because including it would have inappropriately framed, in part, an amount that could impact the jury's finding as to the appropriate amount. Under Delaware decisional law, it is axiomatic that an attorney cannot provide his or her opinion regarding an appropriate amount for general damages.[14] It follows that it would be improper for the Court to comment on an amount, through jury instruction or otherwise. As the Court explained to the parties, that would have stepped too close to the line of framing, on the lower end, an amount that the jury should consider when awarding Mr. Brown's general damages.

Throughout the three-day trial, both parties presented their evidence and arguments consistently with their recognition that Mr. Brown suffered *at least* a two-month in duration soft tissue injury. In fact, during Mr. Arnolds' summation, his counsel argued effectively from a power point that Mr. Brown suffered such an injury, though not a permanent one. When presenting that argument, she accurately crystallized the dispute between the parties that the Court describes above – that is, did he suffer a two-month-in-duration injury or a permanent injury with permanent partial impairment? Notwithstanding (1) Mr. Arnold's concession in the pretrial stipulation and order, (2) Mr. Arnold's trial presentation that tracked his understanding that Mr. Brown suffered an injury, and (3) jury instructions that memorialized that Mr. Brown suffered an injury, the jury returned a zero-dollar verdict.

---

[14] *See McNally v. Eckman*, 466 A.2d 363, 374-75 (Del. 1983) (providing that counsel and trial courts must be on guard against, and cure, remarks that may "carr[y] with them the dangerous potential of the impermissible suggestion of a verdict for general damages"), *overruled on other grounds, Wright v. State*, 953 A.2d 144, 149 (Del. 2008); *see also Henne v. Balick*, 146 A.2d 394, 398 (Del. 1958) (recognizing that a witness's or counsel's suggestion regarding a reasonable award for pain and suffering is inappropriate).

## II. THE PARTIES' ARGUMENTS

Mr. Brown asks the Court to grant his motion for a new trial because uncontroverted medical opinion testimony at trial recognized that the accident caused him injury, and because Dr. Barrish observed Mr. Brown to have cervical muscle spasms when he examined him. The latter observation, according to Mr. Brown's motion, qualified as an objective finding that corroborated the experts' uncontroverted medical testimony. In addition, Mr. Brown emphasizes that Mr. Arnold conceded, throughout the trial, that Mr. Brown suffered at least some injury.

In response, Mr. Arnold opposes retrying the case. He stresses that the jurors are the sole judges of the facts and contends they were free to disregard even the uncontroverted portions of the experts' opinions. Because Mr. Arnold believes that the verdict should stand, he seeks cost recovery on two grounds: as the prevailing party, and because the zero-dollar award was less than his offer of judgment.

## III. STANDARD

The Court must provide great deference to a jury's verdict when it evaluates a motion for a new trial that challenges the sufficiency of the evidence.[15] It may grant a new trial only if the "evidence preponderates so heavily against the jury verdict that a reasonable jury could not have reached the result."[16] Furthermore, a challenged damages award should be overturned only if it is so grossly disproportionate to the injuries that it shocks the Court's conscience and sense of justice.[17]

---

[15] *Maier v. Santucci*, 697 A.2d 747, 749 (Del. 1997).

[16] *Reid v Hindt*, 2006 WL 1148819, at *1 (Del. Super. Jan. 30, 2006).

[17] *Powell v. AmGuard Ins. Co.*, 2020 WL 996734, at *4 (Del. Super. Mar. 2, 2020) (citing *Storey v. Castner*, 314 A.2d 187, 193 (Del. 1973).

Finally, as will be important in each of the sections below, our civil justice system requires a jury to award reasonable compensation to a plaintiff harmed by the negligence of another. Where there is no dispute regarding who was liable for an automobile accident, and no dispute that the plaintiff suffered at least a minimal injury, a compensatory damages award of zero-dollars requires a new trial.[18]

## IV. ANALYSIS

A new trial is necessary for each of the several reasons discussed below. They include the law of the case, the parties' conduct at trial, the jury's failure to follow the Court's instructions, and the sufficiency of the evidence. Furthermore, because a new trial is necessary, Mr. Arnold's motion for costs must be denied.

### A. The law of the case and both parties' trial presentations confirmed that Mr. Brown suffered an injury that required compensation.

A trial court's decision that resolves an issue in a case forms the law of the case as to that issue.[19] In that way, when a court either explicitly or implicitly decides a matter, the matter is settled for the balance of the proceedings.[20] Here, the law of the case, as charged to the jury, makes their zero-dollar verdict unsustainable.

Before trial, the pretrial stipulation and order marshalled the order and scope of the trial. When the Court approved the stipulated order, that order "control[led] the subsequent course of the action unless modified by a subsequent order."[21] In that way, Mr. Arnold's concession that Mr. Brown suffered some injury, confirmed by Court order, resolved that issue. In this case, the parties stipulated that (1) Mr.

---

[18] *Maier*, 697 A.2d at 748.
[19] *State v. Reyes,* 155 A.3d 331, 350 (Del. 2017).
[20] *Estate of Krieger v. AmGuard*, 2021 WL 733442, at *2 (Del. Super. Feb. 25, 2021).
[21] Super. Ct. Civ. R. 16(e).

Arnold's negligence was the sole proximate cause of the collision, and (2) the collision injured Mr. Brown. The jury could not permissibly ignore the jury instruction that told them that Mr. Arnold bore sole responsibility for the accident. Likewise, it had no latitude to disregard the Court's instruction that he suffered an injury.

Apart from the pretrial stipulation, all evidence and argument presented at trial aligned with a recognition that the accident caused injury. At the outset, Mr. Arnold had originally denied that Mr. Brown suffered any injury related to the accident.[22] Nevertheless, when a party impliedly agrees to amend the pleadings through his or her conduct and presentation at trial, the pleadings amend to conform to that understanding.[23] Here, they agreed in their opening statements that Mr. Arnold suffered injury. Throughout the trial, Mr. Arnold presented no evidence to dispute that Mr. Brown suffered at least a two-month soft tissue injury. Nor did he attempt to impeach Mr. Brown's testimony regarding the first two months of his injury or that he had no preexisting neck pain. Finally, Mr. Arnold conceded in his closing that the accident caused Mr. Brown injury. Even independently of the pretrial stipulation and order, and the jury instructions that reflected the stipulation, Mr. Arnold impliedly consented, through his conduct at trial, to a jury finding of injury.

---

[22] Def.'s Ans. ¶ 4-6.

[23] *See* Super. Ct. Civ. R. 15(b) (providing that "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been in the pleadings"); *see also Taplin v. Schuitemaker*, 2019 WL 126981, at *6-7 (Del. Super. Jan. 7, 2019) (acknowledging that Rule 15(b) recognizes that an amendment should be deemed granted if the trial "record indicates that the parties [understood] that the evidence was aimed at the unpleaded issue."); 6A Charles Alan Wright & Arthur Miller Federal Practice and Procedure § 1493 (3d ed. 2006) (providing helpful discussion regarding how issues may be tried by express or implied consent of the parties and recognizing that parties may expressly consent to doing so by stipulation).

## B. The uncontroverted evidence presented at trial does not support a zero-dollar verdict.

Apart from the pretrial order and the parties' presentations that shaped the dispute, the evidence in this case left the trier of fact no reasonable alternative other than to award Mr. Brown compensation. Delaware courts spent significant effort addressing new trial motions in zero-dollar verdict cases in the 1990s and 2000s. For that reason, the Delaware Supreme Court provided additional guidance for the Superior Court through two decisions: *Maier v. Santucci*[24] and *Amalfitano v. Baker*.[25]

First, in *Maier*, the Court considered an appeal regarding a new trial motion that followed a zero-dollar verdict after the trial court directed a partial verdict as to liability.[26] There, as in Mr. Brown's case, two opposing experts testified that the accident caused the plaintiff's cervical sprain.[27] The Supreme Court held that a zero-dollar award was inadequate as a matter of law in the absence of any evidence of record to the contrary.[28] Accordingly, the Supreme Court remanded the case and ordered the Superior Court to conduct a new trial.[29] When it explained its decision, it recognized that when all available evidence establishes that a plaintiff suffered some injury, if there is no dispute regarding fault, the jury must return a verdict of at least minimal damages.[30] Importantly, the *Maier* Court did not qualify its analysis by requiring that an objective sign of injury corroborate uncontroverted medical opinion evidence as a basis for a new trial.[31]

---

[24] 697 A.2d at 749.
[25] 794 A.2d 575 (Del. 2001).
[26] *Maier*, 697 A.2d at 748.
[27] *Id*. at 749.
[28] *Id*.
[29] *Id*.
[30] *Id*.
[31] *Id*.

9

Next, in the *Amalfitano* decision, the Supreme Court discussed what evidence rose to the level of conclusiveness in such cases.   There, the Court examined a trial record where liability for the collision was fixed, there were  uncontroverted medical opinions that the plaintiff suffered injury, and objective findings corroborated those uncontroverted opinions.[32]   Under those circumstances, the Court held a zero-dollar verdict to be inappropriate as a matter of law.[33]

Mr. Brown understandably focuses a portion of his argument on what he contends to have been an objective sign of injury, spasm.   He does so, no doubt because of the reading that some court decisions have applied to *Amalfitano*. Namely, some decisions have found *Amalfitano* to impose a litmus test for new trials in such cases;  that is,  a requirement that there be some objective sign of injury that supports uncontroverted opinions that are based upon a plaintiff's subjective complaints.  The *Amalfitano* decision, however, does not require or even suggest such a test.   It does not alter the traditional standard that a trial court must apply when it evaluates a new trial motion based upon allegedly insufficient evidence. Rather, the Court must consider the totality of the evidence, including whether the plaintiff's credibility created an issue at trial.   According to *Amalfitano*, even if a plaintiff has significant credibility issues, a zero-dollar verdict is improper in cases where objective findings corroborate uncontroverted expert opinions that a plaintiff has suffered an injury.[34]

Stated differently, the Court's holding in *Amalfitano* provides that uncontroverted expert testimony regarding injury, corroborated by objective findings, *conclusively* renders a zero-dollar verdict unsustainable.[35]    When the

---

[32] *Amalfitano*, 794 A.2d at 575.
[33] *Id*. at 578.
[34]  *Id*. at 577-78.
[35] *Id*.

Supreme Court so held, it did not contemporaneously stamp a precondition that requires objective findings upon all such cases. Rather, it explained that such evidence conclusively ends the inquiry in favor of a new trial. It does not inversely bar a trial court from granting a new trial absent objective evidence of injury.

For that reason, reading the *Maier* and *Amalfitano* decisions together provide alternative analyses. The first alternative, used in *Maier*, includes simply applying the general standard for granting a new trial based on insufficiency of the evidence. In that event, the trial court must determine if the jury could have reasonably inferred, based upon the evidence, that there was no injury. If the trial evidence permitted no reasonable inference of absence of injury and the jury declined to compensate the plaintiff, a new trial is appropriate. The second alternative, explained in *Amalfitano*, conclusively recognizes the need for a new trial when objective evidence of injury corroborates uncontroverted medical opinion testimony and there is no dispute as to liability. That alternative recognizes that a trial court must grant a new trial motion in such circumstances, even if the plaintiff's credibility suffered at trial.

Here, Mr. Brown's case aligns more closely with *Maier* than *Amalfitano*. Because of that, the Court's analysis does not hinge on whether an objective finding supported the injury, despite Mr. Brown's reliance on Dr. Barrish's testimony regarding spasm. There are two reasons that the second alternative does not apply.

First, Dr. Barrish testified that Mr. Brown had neck spasms. While this Court has previously, and appropriately, recognized that spasms may constitute an objective sign of injury,[36] Dr. Barrish testified equivocally on the issue. Namely,

---

[36] *See Parisi v. State Farm Mut. Auto Ins. Co.*, 2010 WL 4139289, at *1 (Del. Super. Oct. 18, 2010) (recognizing, that *based upon a doctor's testimony*, muscle spasms qualify as "objective findings beyond the control of a patient," which in turn supported a new trial in an uncontested liability, zero-dollar verdict case).

11

he testified that spasms "could go either way," meaning they could be either an objective *or* subjective finding.[37]

Second, and apart from that testimony, Dr. Barrish did not examine Mr. Brown until July 16, 2020, nearly three years after the October 2017 accident.[38] When he did, there were spasms noted during only that single examination.[39] The time gap between the uncontroverted two-month period of injury and the neck spasms provides no nexus between the two. If the jury were to accept Dr. Gelman's opinion that Mr. Brown's accident-related injuries resolved within two months of the accident, then spasms occurring years later were not *relevant* objective findings. In other words, the jury could have permissibly concluded on this record that the spasms had nothing to do with the accident.

A new trial is nevertheless appropriate under the first alternative that requires the Court to apply the traditional standard for granting a new trial based on insufficiency of the evidence. In this case, the evidence included two opposing experts' testimonies that Mr. Brown suffered a neck injury that caused him at least two months of pain, limitations, and medical treatment.[40] It also included emergency room, primary care, and physical therapy records that confirmed treatment during those two months. Furthermore, there was no evidence that Mr. Brown had any pain or limitations related to his neck before the day of the accident.

---

[37] Ct. Ex. 1, at 19.

[38] Ct. Ex. 1, at 12.

[39] *See* Pl. Ex. 1, Bayhealth Medical R. at 8 (Oct. 3, 2017) (including with the trial evidence an emergency room prescription for Flexeril in the event spasms developed). Mr. Brown identifies nothing in the record, however, to support a finding that any medical provider observed Mr. Brown exhibit neck spasms during the first two months of his treatment.

[40] The Court recognizes that a third expert, Dr. Michael Brooks, testified on behalf of Mr. Arnold. He identified himself as a neuroradiologist who explained why he believed that certain structural issues in Mr. Brown's neck preexisted the accident based upon a film-only review. He offered no opinion, however, regarding whether the condition caused pain, suffering, or limitations at any point, before or after the accident. To the contrary, he told the jury that was outside the scope of his expertise.

12

Finally, no trial evidence, neither substantive nor through impeachment, created "the kind of credibility problems that plague" plaintiffs in other cases.[41] Unfortunately, the jury simply "ignore[d] the facts that [were] uncontroverted and against which no inference lies."[42]

In summary, the Court must remain, as always, extremely deferential to a jury's verdict. Notwithstanding that deference, and notwithstanding the absence of any relevant objective findings, there was no basis in the evidence to support the jury's decision in this case. For that reason, and for the reasons discussed above regarding the law of the case and the parties' trial presentations, Mr. Brown is entitled to a new trial. In granting this new trial motion, the Court presents no opinion regarding the amount necessary to compensate the plaintiff appropriately. That is, and will remain, a jury question after retrial.

### C. Mr. Arnold is not entitled to costs because there will be a new trial.

As a final matter, the Court denies Mr. Arnold's motion for costs pursuant to Superior Court Rule 54. Mr. Arnold is not the prevailing party and unless there is an amendment to the pretrial order *and* different evidence surfaces during the second trial, Rule 54 cost recovery will remain unavailable. In other words, an award of damages, in any amount, will make Mr. Brown the prevailing party for purposes of Rule 54.

The portion of Mr. Arnold's motion for costs filed under Superior Court Civil Rule 68 raises a different question but must also be denied because a new trial is

---

[41] *See Amalfitano*, 794 A.2d at 578 (explaining that in *Gier v. Kananen*, 1993 WL 227390 (Del. June 7, 1993), the Delaware Supreme Court properly denied a new trial motion where a jury awarded a zero-dollar verdict because the uncontradicted expert medical opinion relied solely on the subjective complaints of a plaintiff who exhibited exceptional and fraudulent behavior that affected her credibility)

[42] *See Maier*, 697 A.2d at 749 (recognizing that to decline to grant a new trial under these circumstances would be an abuse of a trial court's discretion).

necessary. Resolution of that motion, if it later becomes appropriate, will turn on a comparison of the amount of the final award to Mr. Arnold's offer of judgment. Accordingly, Mr. Arnold's motion for costs based on Rule 68 is denied without prejudice.

## V.　　CONCLUSION

In summary, the law of the case, the parties' conduct which conformed the pleadings to the evidence, and the great weight of the evidence, all made a zero-dollar verdict unsustainable. As a result, Plaintiff James Brown's motion for a new trial must be **GRANTED**. It follows that Defendant David Arnold's motion for costs must be **DENIED, without prejudice**.

**IT IS SO ORDERED.**

/s/ Jeffrey J Clark
Resident Judge

JJC:klc
*Via File & Serve Express*

14